PER CURIAM.
 

 John Richard Marek, a prisoner under sentence of death, appeals the postconviction court’s order denying his second successive motion for postconviction relief, which was filed pursuant to Florida Rule of Criminal Procedure 3.851. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons stated below, we affirm the postconviction court’s order denying relief.
 

 I. BACKGROUND
 

 Marek was convicted of first-degree murder, kidnapping, attempted burglary, and battery in the 1983 murder of Adella Marie Simmons, and was sentenced to death.
 
 [1]
 
 We affirmed the judgment and sentence on direct appeal.
 
 Marek v. State,
 
 492 So.2d 1055 (Fla.1986). Thereafter, this Court affirmed the postconviction court’s denial of Marek’s initial motion for postconviction relief and denied his attendant petition for a writ of habeas corpus.
 
 Marek v. Dugger,
 
 547 So.2d 109 (Fla.1989). Subsequently, we denied another habeas petition,
 
 Marek v. Singletary,
 
 626 So.2d 160 (Fla.1993), and then affirmed the denial of relief on Marek’s first successive postconviction motion and denied his third habeas petition,
 
 Marek v. State,
 
 Nos. SC04-229 & SC05-1491, 940 So.2d 427 (Fla. order filed June 16, 2006). Marek also sought postconviction relief in the federal courts. The United States District Court for the Southern District of Florida denied Marek’s federal habeas petition, and the Court of Appeals for the Eleventh Circuit affirmed the denial.
 
 Marek v. Singletary,
 
 62 F.3d 1295 (11th Cir.1995).
 

 In May 2007, Marek filed his second successive motion for postconviction relief, which he later amended. The amended motion raised two claims and requested leave to amend the motion.
 

 In his first claim, Marek argued that Florida’s procedures for lethal injection violate the Eighth Amendment to the Constitution of the United States. Marek presented his challenge to the procedures as a newly discovered evidence claim based on the December 2006 execution of Angel Diaz and the subsequent investigations, re
 
 *1126
 
 ports, and statements by the Governor and the Department of Corrections.
 

 In his second claim, Marek argued generally that his death sentence was imposed arbitrarily and capriciously thus violating
 
 Furman v. Georgia,
 
 408 U.S. 238, 92 S.Ct. 2726, 83 L.Ed.2d 346 (1972), which held that the death penalty must be imposed fairly and consistently. Marek based this claim on the American Bar Association’s September 17, 2006, report,
 
 Evaluating Fairness and Accuracy in the State Death Penalty Systems: The Florida Death Penalty Assessment Report
 
 (ABA Report), which criticizes Florida’s death penalty scheme and clemency process. Marek asserted that the ABA Report constitutes newly discovered evidence demonstrating that his death sentence is unconstitutionally arbitrary and capricious. In addition to relying on the ABA Report, Marek asserted that his death sentence is unconstitutionally arbitrary as a result of the State’s taking inconsistent positions in the separate trials of Marek and his codefendant, Raymond Wigley, concerning whether Ma-rek or Wigley was the dominant actor in the kidnapping and murder.
 

 Finally, as part of this second claim, Marek asserted that his previously raised claim that his trial counsel failed to conduct an adequate investigation of Marek’s background for the presentation of mitigation in the penalty phase of his trial should be reevaluated under the standards enunciated in
 
 Rompilla v. Beard,
 
 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005);
 
 Wiggins v. Smith,
 
 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), and
 
 Williams v. Taylor,
 
 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Marek argues that these cases modified the standard of review for claims of ineffective assistance of counsel under
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 

 On April 20, 2009, while Marek’s second successive postconviction motion was pending in the circuit court, Governor Charlie Crist signed Marek’s death warrant.
 

 On April 23, 2009, the postconviction court summarily denied Marek’s second successive motion for postconviction relief and request for leave to amend the motion. Citing this Court’s recent cases rejecting constitutional challenges to Florida’s lethal injection procedures, the postconviction court rejected Marek’s Eighth Amendment challenge to Florida’s lethal injection procedures. The postconviction court also ruled that the ABA Report did not constitute newly discovered evidence and held that Marek’s claim that his sentencing was arbitrary in violation of
 
 Furman
 
 was mer-itless. The postconviction court found that the prosecutor did not pursue inconsistent theories at the separate trials of Marek and Wigley. And finally, the postconviction court rejected Marek’s claim requesting another review of his claim of ineffective assistance of penalty-phase counsel, finding that the request was an improper attempt to relitigate a procedurally barred issue.
 

 On April 27, 2009, Marek filed a motion that sought both rehearing of the postcon-viction court’s summary denial of his motion to vacate and an opportunity to amend his motion to vacate. He requested leave to add the claims that his execution is unconstitutional because he has spent over twenty-five years on death row and that the United States Supreme Court’s future holding in
 
 Caperton v. A.T. Massey Coal Co.,
 
 No. 33350, — W.Va.-, — S.E.2d -, 2008 WL 918444 (W.Va. Apr. 3, 2008),
 
 cert. granted,
 
 — U.S. -, 129 S.Ct. 593, 172 L.Ed.2d 452 (2008), may demonstrate that he was denied due process when Judge Kaplan presided over his initial postconviction proceeding. Later that same day, the postconviction court
 
 *1127
 
 denied the motion for rehearing and the motion to amend.
 

 Marek appeals the postconviction court’s denial of his motion to vacate, his motion for rehearing, and his motion to amend. He argues that (A) his sentence of death violates the Eighth and Fourteenth Amendments of the United States Constitution because it is the result of a process that permitted the arbitrary and capricious imposition of a sentence of death; (B) Florida’s lethal injection execution procedures violate the United States and Florida Constitutions; and (C) the posteonvietion court erred in denying his motion to amend and the claims contained therein.
 

 II. ANALYSIS
 

 An evidentiary hearing must be held whenever the movant makes a facially sufficient claim that requires a factual determination.
 
 Amendments to Fla. Rules of Crim. Pro. 3.851, 3.852, & 3.993,
 
 772 So.2d 488, 491 n. 2 (Fla.2000). However, “[p]ostconviction claims may be summarily denied when they are legally insufficient, should have been brought on direct appeal, or are positively refuted by the record.”
 
 Connor v. State,
 
 979 So.2d 852, 868 (Fla.2007). Because a postconviction court’s decision whether to grant an evidentiary hearing on a rule 3.851 motion is ultimately based on written materials before the court, its ruling is tantamount to a pure question of law, subject to de novo review.
 
 See State v. Coney,
 
 845 So.2d 120, 137 (Fla.2003). We conclude that the postcon-viction court’s summary denial of Marek’s second successive motion was not erroneous. Each of Marek’s claims is legally insufficient or, because it could have been or was raised in a prior proceeding, proee-durally barred.
 

 A. Arbitrary Sentencing
 

 In his first claim on appeal, Marek argues that his sentence is unconstitutionally arbitrary under
 
 Furman
 
 because (1) the State argued inconsistent theories in his trial and the trial of codefendant Wigley; (2) Marek’s claim of ineffective assistance of penalty-phase counsel, raised in his initial postconviction motion, should be reevaluated; and (3) Florida’s clemency process is inadequate. These arguments were raised in Marek’s second successive post-conviction motion, and the postconviction court expressly addressed the first two arguments in its order denying relief.
 

 The postconviction court did not err in concluding that the prosecutor did not pursue inconsistent theories at trial and that Marek’s argument on this point was merit-less. Marek’s argument that his death sentence is unconstitutionally arbitrary as a result of the State taking inconsistent positions about whether Marek or his co-defendant was the dominant actor in the kidnapping and murder is insufficiently pleaded, procedurally barred, and based on the record before us, without merit.
 

 Marek’s inconsistent-theories argument is insufficiently pleaded under Florida Rule of Criminal Procedure 3.851(d)(2). Marek does not (1) explain why the facts upon which the argument is predicated were unknown and could not be ascertained by the exercise of due diligence or (2) cite to a newly established fundamental constitutional right that applies retroactively.
 

 In his direct appeal, Marek argued that his death sentence was “cruel and unusual, arbitrary, and unequal” in light of codefen-dant Wigley’s life sentence.
 
 Marek,
 
 492 So.2d at 1058. That claim on direct appeal indicates that Wigley was sentenced prior to 1986. Yet Marek did not raise this claim of inconsistent theories until the instant postconviction proceeding. Marek does not explain why the prosecutor’s theory in Wigley’s case could not have been discovered previously by the exercise of due diligence.
 

 
 *1128
 
 Furthermore, we conclude that Marek’s argument is not based on any new constitutional right. Marek asserts that in
 
 Bradshaw v. Stumpf,
 
 545 U.S. 175, 125 S.Ct. 2898, 162 L.Ed.2d 143 (2005), and
 
 Raleigh v. State,
 
 982 So.2d 1054 (Fla.2006), the Supreme Court and this Court recognized that the State’s pursuit of inconsistent theories against codefendants constitutes a violation of due process. Marek is incorrect. The postconviction court’s order correctly notes that this Court’s recent decision in
 
 Walton v. State,
 
 3 So.3d 1000, 1005-06 (Fla.2009), forecloses Marek’s argument. In
 
 Bradshaw,
 
 the Supreme Court held that the allegedly inconsistent prosecution theories could not have affected Stumpfs conviction and declined to address whether the allegedly inconsistent theories affected sentencing. 545 U.S. at 187, 125 S.Ct. 2398. The next year, in
 
 Raleigh,
 
 932 So.2d at 1065-67, this Court rejected an inconsistent-theories claim on the basis that the State’s theories were not inconsistent, without addressing whether such a due process right was established by
 
 Bradshaw.
 
 Most recently, in
 
 Walton
 
 this Court expressly held that
 
 Bradshaw
 
 “did not recognize a new fundamental constitutional right that applies retroactively.”
 
 Walton,
 
 3 So.3d at 1005.
 
 See also Byrd v. State,
 
 34 Fla. L. Weekly S307, S307, — So.3d -, -, 2009 WL 857419 (Fla.Apr. 2, 2009) (“Clearly,
 
 Stumpf
 
 did not articulate a new rule of law, and this successive postconviction claim is therefore barred.”). Thus, Marek’s argument is procedurally barred.
 

 Finally, Marek has not established that the State actually argued inconsistent theories. Based on the trial excerpts included in Marek’s motion for rehearing filed in the postconviction court and his appellate brief filed here, Marek has not demonstrated that in different trials the State attributed specific acts to different defendants or any such direct inconsistency.
 
 [2]
 

 The postconviction court also did not err in denying Marek’s argument that his previously raised claim of ineffective assistance of counsel should be reevaluated under the standards enunciated in
 
 Rompilla^ Wiggins,
 
 and
 
 Williams.
 
 Contrary to Ma-rek’s argument, the United States Supreme Court in these cases did not change the standard of review for claims of ineffective assistance of counsel under
 
 Strickland.
 
 In
 
 Rompilla,
 
 the Court expressly concluded, based on the factual record in that case, that trial counsel’s failure to
 
 *1129
 
 review the defendant’s prior conviction file for mitigation evidence constituted ineffective assistance of counsel. 545 U.S. at 390, 125 S.Ct. 2456. Similarly, in
 
 Wiggins,
 
 the Court concluded that given the information trial counsel had regarding
 
 Wiggins’
 
 childhood, their failure to broaden the scope of their investigation into possible mitigating factors constituted ineffective assistance of counsel as defined in
 
 Strickland.
 
 Indeed, the
 
 Wiggins
 
 Court began its analysis by stating that
 
 Strickland
 
 “established the legal principles that govern claims of ineffective assistance of counsel.” 539 U.S. at 521, 123 S.Ct. 2527. Finally, the
 
 Williams
 
 Court also concluded that trial counsel’s failure to discover and present mitigating evidence violated Williams’ rights as defined in
 
 Strickland.
 
 As the Supreme Court explained in
 
 Williams,
 
 “It is past question that the rule set forth in
 
 Strickland
 
 qualifies as ‘clearly established Federal law, as determined by the Supreme Court of the United States.’ ” 529 U.S. at 391, 120 S.Ct. 1495. Furthermore, we are not aware of any reported decision, and Marek has not identified any, adopting the view that
 
 Rompilla, Wiggins,
 
 and
 
 Williams
 
 modified the standard of review governing ineffective assistance of counsel claims.
 

 Moreover, Marek’s argument is procedurally barred because he previously litigated this issue. In his appeal from the denial of his prior successive postconviction motion, Marek argued that his claim of ineffective assistance of counsel should be reexamined under those cases because “Judge Kaplan’s partiality impaired his ability to follow these standards in evaluating prejudice in Mr. Marek’s case.” In his accompanying habeas petition, Marek argued that the “Court’s prior decision affirming the denial of [his] claim that he received ineffective assistance at the penalty proceeding is in error in light of the recent decision[s] by the United States Supreme Court in
 
 Rompilla v. Beard,
 
 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005), and
 
 Wiggins v. Smith,
 
 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).” Marek is not entitled to relitigate this issue.
 
 [3]
 

 Next, Marek argues that the post-conviction court’s denial of his second successive motion was erroneous because, as explained in the ABA Report, Florida’s clemency process fails to correct for arbitrary factors in the capital sentencing scheme. Marek asserts that the clemency process is one-sided, arbitrary, and stan-dardless. Again, his argument is without merit. In
 
 Rutherford v. State,
 
 940 So.2d 1112 (Fla.2006), the defendant — relying on the ABA Report — argued that Florida’s clemency process is arbitrary and capricious. This Court rejected the argument “that the ABA Report requires us to reconsider our prior decisions rejecting constitutional challenges to Florida’s clemency process.”
 
 Id.
 
 at 1122.
 

 Moreover, Marek and the State agree that a full clemency proceeding was conducted in 1988 and that public records demonstrate that in 2008, the Governor corresponded with the Florida Parole Commission about Marek. Marek’s death warrant expressly states that “it has been determined that Executive Clemency, as authorized by Article IV, Section 8(a), Florida Constitution, is not appropriate.”
 
 *1130
 
 Previously, in
 
 Bundy v. State,
 
 497 So.2d 1209, 1211 (Fla.1986), this Court, in rejecting Bundy’s contention that he was entitled to time to prepare and present an application for clemency before execution, explained that
 

 [i]t is not our prerogative to second-guess the application of this exclusive executive function. First, the principle of separation of powers requires the judiciary to adopt an extremely cautious approach in analyzing questions involving this admitted matter of executive grace. As noted in
 
 In re Advisory Opinion of the Governor,
 
 334 So.2d 561, 562-63 (Fla.1976), “[t]his Court has always viewed the pardon powers expressed in the Constitution as being peculiarly within the domain of the executive branch of government.”
 

 Bundy,
 
 497 So.2d at 1211 (some citations omitted);
 
 accord Glock v. Moore,
 
 776 So.2d 243, 253 (Fla.2001);
 
 Provenzano v. State,
 
 739 So.2d 1150, 1155 (Fla.1999). Marek has not presented any reason that this Court should depart from these precedents.
 

 B. Florida’s Lethal Injection Procedures
 

 Marek’s next claim challenges the constitutionality of Florida’s lethal injection procedures. We have repeatedly rejected similar claims and have upheld the constitutionality of Florida’s lethal injection procedures.
 
 See Tompkins v. State,
 
 994 So.2d 1072, 1081 (Fla.2008),
 
 cert. denied,
 
 — U.S. -, 129 S.Ct. 1305, 173 L.Ed.2d 483 (2009);
 
 Power v. State,
 
 992 So.2d 218, 220-21 (Fla.2008);
 
 Sexton v. State,
 
 997 So.2d 1073, 1089 (Fla.2008);
 
 Schwab v. State,
 
 969 So.2d 318, 321-25 (Fla.2007),
 
 cert. denied,
 
 — U.S.-, 128 S.Ct. 2486, 171 L.Ed.2d 777 (2008);
 
 Lightbourne v. McCollum,
 
 969 So.2d 326, 349-53 (Fla.2007),
 
 cert. denied,
 
 — U.S. -, 128 S.Ct. 2485, 171 L.Ed.2d 777 (2008). We also have held the procedures constitutional under the requirements of
 
 Baze v. Rees,
 
 — U.S. -, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008).
 
 See Ventura v. State, 2
 
 So.3d 194, 200 (Fla.2009) (“Florida’s current lethal-injection protocol passes muster under
 
 any
 
 of the risk-based standards considered by the
 
 Baze
 
 Court (and would easily satisfy the intent-based standard advocated by Justices Thomas and Sealia).”),
 
 petition for cert, filed,
 
 No. 08-10098 (U.S. Apr. 16, 2009);
 
 Henyard v. State,
 
 992 So.2d 120, 130 (Fla.2008),
 
 cert. denied,
 
 — U.S. -, 129 S.Ct. 28, 171 L.Ed.2d 930 (2008). Marek has not presented any reason why we should not follow the same course in his case.
 

 Marek argues that he cannot be denied an evidentiary hearing based on
 
 Lightb-oume
 
 because he was not a party in that case. In support of this argument, he cites
 
 Teffeteller v. Dugger,
 
 676 So.2d 369 (Fla.1996), for the proposition that a defendant’s collateral claim cannot be denied on the basis of evidence presented when neither he nor his counsel was present. Ma-rek lists four witnesses he would have called if granted an evidentiary hearing. However, we rejected this exact argument in
 
 Tompkins,
 
 and we reject it again here.
 

 Accordingly, we hold that the postcon-viction court did not err in summarily denying this claim.
 

 C. Motion to Amend
 

 Marek’s final claim is that the post-conviction court erred in denying his motion to amend his second successive post-conviction motion to raise two additional claims. First, Marek sought to present a claim that the length of time he has spent on death row, twenty-five years since he was sentenced and twenty-three years since his sentence became final, is cruel and unusual punishment in violation of the Eighth Amendment. Second, Marek sought to present a claim based on
 
 Caper-ton,
 
 which concerns the disqualification of
 
 *1131
 
 a judge due to a relationship with a litigant. The denial of a motion to amend a postconviction motion is reviewed for abuse of discretion.
 
 Walton,
 
 3 So.3d at 1012 (citing
 
 Huff v. State,
 
 762 So.2d 476, 481 (Fla.2000)). Because Marek’s claims lack merit, we hold that the postconviction court did not abuse its discretion in denying Marek’s motion to amend.
 

 With regard to the claim about the length of time Marek has spent on death row, we have previously rejected similar arguments. In
 
 Tompkins,
 
 994 So.2d at 1085, we held that twenty-three years on death row did not constitute cruel and unusual punishment. We explained that “this Court recognized that ‘no federal or state court has accepted the argument that a prolonged stay on death row constitutes cruel and unusual punishment, especially where both parties bear responsibility for the long delay.’ ”
 
 Id.
 
 (quoting
 
 Booker v. State,
 
 969 So.2d 186, 200 (Fla.2007)). In this case, Marek has contributed to the delay of his execution by filing several postconviction motions and habeas petitions. He has also been a party to several class action proceedings. As we stated in
 
 Tompkins,
 
 “He cannot now contend that his punishment has been illegally prolonged because the delay in carrying out his sentence is in large part due to his own actions in challenging his conviction and sentence.”
 
 Id.
 

 With regard to
 
 Caperton,
 
 Marek contends that
 
 when
 
 the Supreme Court decides
 
 Caperton,
 
 the decision
 
 may
 
 demonstrate that he was deprived of due process of law when Judge Kaplan presided over the 1988 evidentiary hearing in Ma-rek’s initial postconviction proceedings. This claim is legally insufficient and merit-less. In
 
 Caperton,
 
 the West Virginia Supreme Court overturned a lower court’s decision against a coal company, with Justice Benjamin voting with the majority. The issue before the Supreme Court in
 
 Caperton
 
 concerns whether a state supreme court justice’s participation in a case in which a principal financial campaign supporter was a party violated the Due Process Clause of the Fourteenth Amendment. The factual predicate underlying Marek’s motion to disqualify Judge Kaplan, however, is distinguishable from that at issue in
 
 Caperton.
 
 Judge Kaplan presided over Marek’s trial and initial postconviction motion. In 1997, almost ten years later, he recused himself from presiding over Marek’s successive postconviction motion to avoid any appearance of impropriety resulting from his recently developed close friendship with Marek’s trial counsel. Marek claims that Judge Kap-lan’s recusal from the latter proceedings required his recusal from the prior post-conviction proceedings held a decade earlier. In addition to his claim being speculative, any forthcoming decision in
 
 Caperton
 
 likely will be irrelevant to Marek’s case. Finally, as the State points out, we have previously rejected a similar argument that this Court should delay an execution in light of a pending Supreme Court case where the facts and issue were much closer.
 
 See King v. State,
 
 808 So.2d 1237, 1246 (Fla.2002) (“We are aware that the United States Supreme Court very recently granted certiorari in
 
 State v. Ring[,
 
 200 Ariz. 267, 25 P.3d 1139 (2001) ]; however, we decline to grant a stay of execution following our precedent on this issue, on which the Supreme Court has denied cer-tiorari.” (citation omitted)). Accordingly, we hold that the postconviction court did not abuse its discretion in denying Marek’s motion to amend.
 

 III. CONCLUSION
 

 For the reasons stated above, we affirm the postconviction court’s order summarily
 
 *1132
 
 denying Marek’s second successive motion for postconviction relief and denying Ma-rek’s motion to amend.
 

 It is so ordered.
 

 QUINCE, C.J., and PARIENTE, CANADY, POLSTON, LABARGA, and PERRY, JJ,, concur.
 

 LEWIS, J., did not participate.
 

 [1]
 

 . Marek’s codefendant, Raymond Wigley, was tried separately and sentenced to life in prison for his role in the kidnapping and murder of Simmons. Wigley was later murdered in prison by John Blackwelder.
 
 See Blackwelder v. State,
 
 851 So.2d 650 (Fla.2003) (affirming Blackwelder's conviction for first-degree murder and his sentence of death).
 

 [2]
 

 .
 
 Moreover, Marek has not followed the procedure for raising a claim of inconsistent trial theories. In
 
 Johnson v. State,
 
 660 So.2d 648, 653 (Fla.1995), this Court set out the procedure to be followed when a claim requires consideration of a separate trial record:
 

 Effective as of [July 13, 1995], we hold that the proper method of bringing relevant matters before this Court that are contained in separate records of pending cases is by way of a motion to supplement the record, not by a request for the taking of judicial notice.... In the future, however, any attempt to cross-reference separate records of pending cases will constitute grounds for the opposing party to move to strike the cross reference under the holdings of
 
 Wuornos [v. State,
 
 644 So.2d 1012 (Fla.1994)] and
 
 Jackson [v. State,
 
 575 So.2d 181 (Fla. 1991) ]. This Court likewise may strike such a cross reference sua sponte. Any order striking a cross reference shall constitute automatic notice to counsel that the record must be supplemented in keeping with rule 9.200(f)(2), and the failure to supplement then will work a procedural bar as to the matters at issue in the improperly cross-referenced material.
 

 (Footnotes omitted.) In
 
 Smith
 
 v.
 
 State,
 
 998 So.2d 516, 525-26 (Fla.2008),
 
 cert.
 
 denied, U.S.-, 129 S.Ct. 2006, 173 L.Ed.2d 1101 (U.S. Apr. 20, 2009) (No. 08-8829), this Court declined to review a claim that the Stale had used inconsistent trial theories where the defendant attempted to incorporate by reference the record from his codefendant's case. We expressly held that the
 
 Johnson
 
 procedure is applicable to such claims.
 
 Id.
 
 at 525.
 

 [3]
 

 . To the extent that Marek relies on
 
 Cone v. Bell,
 
 - U.S. -, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009), to argue that this claim is not barred, his argument is without merit. In
 
 Cone,
 
 the Supreme Court held that the Tennessee courts’ procedural rejection of a claim, where the Tennessee courts never addressed the merits of the claim, did not bar federal habeas review.
 
 Id.,
 
 129 S.Ct. at 1780, 1786. The Supreme Court’s decision has no impact on the Florida courts' policy of not allowing defendants to relitigate claims in state court that have been adjudicated previously on their merits.