# Supreme Court of Florida

───────────

No. SC2025-1915

───────────

**FRANK A. WALLS,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

───────────

No. SC2025-1917

───────────

**FRANK A. WALLS,**
Petitioner,

vs.

**SECRETARY, DEPARTMENT OF CORRECTIONS,**
Respondent.

December 11, 2025

PER CURIAM.

Frank A. Walls is a prisoner under sentence of death for whom a warrant has been signed and an execution set for December 18, 2025. Walls appeals the denial of his successive motion for

postconviction relief, files a petition for a writ of habeas corpus, and seeks a stay of his execution. We have jurisdiction. *See* art. V, § 3(b)(1), (9), Fla. Const. For the reasons that follow, we affirm the denial of postconviction relief. We also deny Walls' habeas petition and his motion for a stay of execution.

## I

In 1987, Edward Alger and Ann Peterson were living together in Okaloosa County, Florida. *Walls v. State* (*Walls I*), 580 So. 2d 131, 132 (Fla. 1991). Alger worked at a nearby air force base, but he did not report for duty on July 22, 1987. *Id.* Alger's absence caused Sergeant Calloway, Alger's superior officer, to go to Alger and Peterson's home. *Id.* Upon arriving, Calloway found Peterson's body in the front bedroom. *Id.* Calloway immediately left the home and called the police. *Id.*

Police investigators arrived and found Peterson lying on the floor of the front bedroom with two gunshots to her head. *Id.* Police found Alger's body on the floor of the second bedroom. *Id.* A curtain cord bound Alger's feet. *Id.* He had been shot three times, and his throat was cut. *Id.*

Investigators obtained a search warrant for the mobile home

- 2 -

where Walls lived with his roommate. *Id.* Police seized several items connected to the crime scene. *Id.* In a post-arrest statement to investigators, Walls detailed his involvement in the murders. *Id.* Walls confessed to investigators that he entered the mobile home of the victims to commit a burglary, knocked over a fan intentionally to wake them up, forced Peterson to tie up Alger, and then restrained Peterson himself. *Walls v. State* (*Walls II*), 641 So. 2d 381, 384 (Fla. 1994). Alger got loose and attacked Walls, which led to Walls cutting Alger's throat. *Id.* at 384-85. Walls then shot Alger several times in the head. *Id.* at 385. Peterson was crying and asked whether Alger was all right. *Id.* Walls told her no, blamed the murder on Alger attacking him, and started wrestling with Peterson and taking her clothes off before shooting her in the back of the head. *Id.* Walls explained that after the first shot, Peterson was "doing all kinds of screaming." *Id.* He then forced her face into a pillow and shot her a second time in the head. *Id.*

The jury convicted Walls of felony murder for Alger's death and of premeditated and felony murder for Peterson's death. *Walls I*, 580 So. 2d at 132. Following the jury's recommendation, the trial

court sentenced Walls to death for Peterson's murder.[1]  *Id.*  But on appeal this Court reversed Walls' judgment and sentence because of a due process violation.  *Id.* at 132-33.

Upon retrial, "[t]he State's guilt-phase case consisted primarily of the physical evidence, testimony by investigating officers, testimony by a pathologist, and Walls' taped confession, which was played for the jury."  *Walls II*, 641 So. 2d at 385.  Walls presented no defense in the guilt phase and the jury found him guilty as charged.  *Id.*

During the penalty phase, the defense detailed Walls' history of behavioral and emotional problems, as well as later treatment.  *Id.*  The defense put Walls' IQ at issue and asserted that Walls was impaired during the murder.  *Id.* at 385-86.  Still, the jury unanimously recommended the death penalty for murdering Peterson.  *Id.* at 386.  The trial court again sentenced[2] Walls to

---

1.  The jury recommended a life sentence for murdering Alger.  *Id.* at 132.

2.  The judge also sentenced Walls to "five years for burglary of a structure, twenty years for the armed burglary of a dwelling, twenty years each for two counts of kidnapping, and two months for petty theft.  Walls again received a life sentence for the murder of Alger."  *Id.*

death after finding the nine mitigators[3] were insufficient to outweigh the six aggravators.[4]  *Id.*  And the trial court specifically rejected the existence of any statutory mental health mitigators.  *Id.*

On Walls' second direct appeal, he raised nine issues.  *Walls v. State* (*Walls III*), 926 So. 2d 1156, 1162-63 (Fla. 2006).[5]  This Court

---

3.  (1) Walls had no significant history of prior criminal activity; (2) Walls' age at the time of the crime (nineteen); (3) Walls had been classified as emotionally handicapped; (4) Walls had apparent brain dysfunction and brain damage; (5) Walls had a low IQ so that he functioned intellectually at about the age of twelve or thirteen; (6) Walls confessed and cooperated with law enforcement officers; (7) Walls had a loving relationship with his parents and a disabled sibling; (8) Walls was a good worker when employed; and (9) Walls had exhibited kindness toward weak, crippled, or helpless persons and animals.  *Id.*

4.  The jury found the following aggravators: (1) prior violent felony conviction; (2) murder committed during burglary or kidnapping; (3) murder committed to avoid lawful arrest; (4) murder committed for pecuniary gain; (5) the murder was heinous, atrocious, or cruel (HAC); and (6) the murder was cold, calculated, and premeditated (CCP).  *Id.*

5.  Walls raised the following issues: (1) the trial court should have excused a potential juror for cause or granted the defense an additional peremptory challenge to excuse the juror; (2) the State improperly exercised peremptory challenges to dismiss two black jurors based on their race; (3) the jurors were kept in session for overtaxing hours during trial; (4) the trial court gave the jury erroneous penalty phase instructions on the mitigating factors of mental disturbance, impairment, or duress and on the aggravating factors of HAC and CCP; (5) the trial court refused to provide the jury with a detailed interpretation of emotional disturbance as a

rejected all of Walls' claims and affirmed his judgment and sentence of death in July 1994. *Id.* at 1163 (citing *Walls II*, 641 So. 2d at 391). The United States Supreme Court then denied Walls' petition for certiorari. *See Walls v. Florida*, 513 U.S. 1130 (1995).

Walls filed his initial motion to vacate his judgment and sentences in 1997, and he amended in 1997 and 2001. *Walls III*, 926 So. 2d at 1163. Walls raised nine claims in his postconviction motion.[6] *Id.* at 1163 n.1. The circuit court denied all of Walls' claims in his postconviction motion. *Id.* at 1163-64.

---

mitigating factor; (6) the trial court made errors in its findings on the aggravating factors because HAC and CCP were not proven beyond a reasonable doubt, the evidence did not support the conclusion that the murder occurred during a kidnapping, the commission during a burglary aggravating factor impermissibly doubled the pecuniary gain factor, and the avoid arrest aggravator was improper; (7) the trial court required Walls to prove the mitigating factors by a preponderance of the evidence; (8) the trial court improperly rejected expert testimony that Walls was suffering from extreme emotional disturbance and substantial impairment; and (9) the death sentence was not proportionate in his case. *Walls II*, 926 So. 2d at 1162-63.

6. Walls raised the following nine claims in his postconviction motion: (1) he was denied a fair guilt phase proceeding due to ineffective assistance of counsel, prosecutorial misconduct, and trial court error; (2) counsel conceded guilt and eligibility for the death penalty without Walls' consent; (3) he was denied a fair penalty phase proceeding due to ineffective assistance of counsel, prosecutorial misconduct, and trial court error; (4) counsel failed to

Walls appealed the denial of his motion, raising two claims encompassing several subclaims: the circuit court erred in (1) denying Walls' ineffective assistance of counsel claims for counsel's

> failure to exclude and object to the admission of evidence of a possible sexual battery, failure to object to a lack of remorse argument by the prosecutor during closing argument, concession of guilt to the facts of felony murder and to the aggravating factor of commission during a burglary, and failure to object to a number of other prosecutorial comments and arguments[;]

and (2) denying Walls an evidentiary hearing on his other five ineffective assistance of counsel claims[7] and his claim that his

_____

obtain an adequate mental health evaluation in violation of *Ake v. Oklahoma*, 470 U.S. 68 (1985); (5) his death sentence is unconstitutional because he is mentally retarded; (6) the trial court did not independently weigh the aggravating and mitigating circumstances; (7) the trial court considered inadmissible victim impact evidence; (8) the jury was improperly instructed on the aggravating factors; and (9) the cumulative effect of these procedural and substantive errors deprived him of a fair trial. *Walls III*, 926 So. 2d at 1164.

7.  These claims were that counsel did not present: (1) expert testimony on the effects of Ritalin, (2) a pharmacologist's testimony about the effects of Walls' drug and alcohol use, (3) an adequate mental health evaluation including a PET scan to show brain damage, and (4) lay testimony on mitigation. *Walls III*, 926 So. 2d at 1169-70.  Claim (5) was that counsel should have filed a motion asserting that the death penalty was barred by double jeopardy

death sentence is improper because he is intellectually disabled. *Id.* at 1164-65, 1169-70. We affirmed the denial of relief as to all claims but Walls' intellectual disability claim. *Id.* at 1181. Because we adopted Florida Rule of Criminal Procedure 3.203[8] after the circuit court's ruling, we held "Walls may still file a rule 3.203 motion for a determination of mental retardation as a bar to execution in the trial court and is entitled to an evidentiary hearing on that motion." *Walls III*, 926 So. 2d at 1174.[9]

Walls then sought federal habeas relief in the United States District Court for the Northern District of Florida under 28 U.S.C. § 2254. *Walls v. McNeil*, No. 3:06CV237/MCR, 2009 WL 3187066, at *1 (N.D. Fla. Sept. 30, 2009), *aff'd sub nom., Walls v. Buss*, 658

---

because retrial was caused by the prosecutor's misconduct. *Id.* at 1169-70.

8. This rule allowed motions to determine intellectual disability even when a defendant's direct appeal proceedings were final. *Walls v. State* (*Walls V*), 213 So. 3d 340, 344 n.3 (Fla. 2016).

9. We also rejected all of Walls' habeas claims: (1) Florida's capital sentencing scheme is unconstitutional under *Ring v. Arizona*, 536 U.S. 584 (2002); (2) his death sentence is invalid under *Ring* because the aggravating circumstances were not charged in his indictment; and (3) appellate counsel was ineffective for failing to raise several claims of error in Walls' direct appeal to this Court. *Walls III*, 926 So. 2d at 1174-75.

F.3d 1274 (11th Cir. 2011). The federal district court denied Walls' petition. *Id.* The court granted in part Walls' application for a certificate of appealability, and the Eleventh Circuit Court of Appeals affirmed. *Walls v. McNeil*, No. 3:06CV237/MCR, 2009 WL 3822951 (N.D. Fla. Nov. 16, 2009); *Walls*, 658 F.3d at 1282. The United States Supreme Court thereafter denied Walls' petition for writ of certiorari. *Walls v. Tucker*, 566 U.S. 976 (2012). Walls then filed an application with the Eleventh Circuit seeking an order authorizing the district court to consider a second or successive petition for a writ of habeas corpus, but the Eleventh Circuit denied the application. *In re Walls*, No. 23-10982-P, 2023 WL 3745103, at *1, *6 (11th Cir. Apr. 13, 2023).

Walls filed his first successive postconviction motion in 2006 pursuant to rules 3.203 and 3.851 of the Florida Rules of Criminal Procedure. *Walls V*, 213 So. 3d at 344. Walls only raised an intellectual disability issue, and the circuit court denied his motion after an evidentiary hearing. *Id.* We affirmed because no evidence supported his intellectual disability claim. *Walls v. State* (*Walls IV*), 3 So. 3d 1248 (Fla. 2008) (table).

Walls filed his second successive postconviction motion under rules 3.851 and 3.852 of the Florida Rules of Criminal Procedure on May 26, 2015. *Walls V*, 213 So. 3d at 344. He amended his motion a day later. *Id.* Walls argued that the application of *Atkins v. Virginia*, 536 U.S. 304 (2002), and *Hall v. Florida*, 572 U.S. 701 (2014), precluded his death sentence because of his IQ scores. *Walls V*, 213 So. 3d at 344. We held that *Hall* applied retroactively to Walls. *Id.* at 346-47. We also concluded that Walls did not receive a proper hearing on his alleged intellectual disability, so we remanded for a new evidentiary hearing. *Id.* at 347. But, between Walls' remand and his ensuing appeal, we determined that *Hall* was not retroactive. *See Phillips v. State*, 299 So. 3d 1013, 1023 (Fla. 2020).[10] The circuit court then held an evidentiary hearing on Walls' intellectual disability claim and relied on *Phillips* to conclude that *Hall* could not provide a basis for relief. *Walls v. State* (*Walls*

10. "We cannot escape the conclusion that this Court in *Walls* clearly erred in concluding that *Hall* applies retroactively. We say that based on our review of *Hall*, our state's judicial precedents regarding retroactivity, and the decisions of federal habeas courts concluding that *Hall* does not apply retroactively." *Phillips*, 299 So. 3d at 1023.

*VII*), 361 So. 3d 231, 233 (Fla. 2023).  Second, the circuit court found that Walls did not prove that he was intellectually disabled under section 921.137, Florida Statutes (2021).  *Walls VII*, 361 So. 3d at 233.  We affirmed the denial of Walls' second successive postconviction motion because there was no new intellectual disability standard applicable to him.  *Id.* at 233-24.  The United States Supreme Court denied Walls' request for a writ of certiorari.  *Walls v. Florida*, 144 S. Ct. 174 (2023).

Walls filed his third successive motion for postconviction relief and sought relief following *Hurst v. Florida*, 577 U.S. 92 (2016).  *Walls v. State* (*Walls VI*), 238 So. 3d 96, 97 (Fla. 2018).  We denied relief because *Hurst* did not apply retroactively to Walls' sentence.  *Id.* at 97.  The United States Supreme Court then denied Walls' petition for writ of certiorari.  *Walls v. Florida*, 586 U.S. 864 (2018).

On November 18, 2025, Governor DeSantis signed a death warrant for Walls' execution.  The execution is set for Thursday, December 18, 2025, at 6:00 p.m.

Timely under this Court's scheduling order, Walls filed his successive motion for postconviction relief at issue here raising three issues: (1) his death sentence is unconstitutional due to his

intellectual disability; (2) his execution is prohibited by the Eighth Amendment because he was nineteen years old at the time of the offense; and (3) the thirty-seven-year delay in carrying out his execution violates the Eighth Amendment because it removes any penological justifications for the death penalty. He also moved for stay of execution.

The circuit court held a *Huff*[11] hearing on December 1, 2025, to decide whether Walls' motion required an evidentiary hearing. That same day, the court denied Walls' request for an evidentiary hearing. On December 3, 2025, the circuit court entered its order summarily denying Walls' successive motion for postconviction relief and denying his motion for stay. Walls now timely appeals the circuit court's order denying his successive motion for postconviction relief. He also seeks habeas relief and a stay of execution.

**II**

"Summary denial of a successive postconviction motion is appropriate '[i]f the motion, files, and records in the case

---

11. *Huff v. State*, 622 So. 2d 982 (Fla. 1993).

conclusively show that the movant is entitled to no relief.' " *Bogle v. State*, 322 So. 3d 44, 46 (Fla. 2021) (alteration in original) (quoting Fla. R. Crim. P. 3.851(f)(5)(B)); *see also* Fla. R. Crim. P. 3.851(h)(6). In reviewing a circuit court's summary denial, "this Court must accept the defendant's allegations as true to the extent that they are not conclusively refuted by the record." *Tompkins v. State*, 994 So. 2d 1072, 1081 (Fla. 2008) (citing *Rolling v. State*, 944 So. 2d 176, 179 (Fla. 2006)). Still, "[t]he defendant bears the burden to establish a prima facie case based on a legally valid claim; mere conclusory allegations are insufficient." *Franqui v. State*, 59 So. 3d 82, 96 (Fla. 2011) (citing *Freeman v. State*, 761 So. 2d 1055, 1061 (Fla. 2000)). A circuit court's decision whether to grant an evidentiary hearing on a rule 3.851 motion "is tantamount to a pure question of law, subject to de novo review." *Marek v. State*, 8 So. 3d 1123, 1127 (Fla. 2009) (citing *State v. Coney*, 845 So. 2d 120, 137 (Fla. 2003)).

Also relevant here, postconviction claims in capital cases must generally be filed within one year after the judgment and sentence become final. Fla. R. Crim. P. 3.851(d)(1). With certain exceptions, rule 3.851 prohibits both untimely and repetitive claims. Fla. R.

- 13 -

Crim. P. 3.851(e)(2); *see also Hendrix v. State*, 136 So. 3d 1122, 1125 (Fla. 2014) ("Claims raised and rejected in prior postconviction proceedings are procedurally barred from being relitigated in a successive motion." (citing *Van Poyck v. State,* 116 So. 3d 347, 362 (Fla. 2013))).

## A

In his first argument on appeal, Walls challenges the postconviction court's denial of his intellectual disability claim, arguing his death sentence is unconstitutional. As the postconviction court determined though, Walls has already raised and been denied relief on this claim. *See Walls VII*, 361 So. 3d at 233 (holding that *Hall* does not apply to Walls' case because *Phillips*, 299 So. 3d at 1024, found *Hall* to not be retroactive). As a result, the claim is procedurally barred. *See* Fla. R. Crim. P. 3.851; *see also Barwick v. State*, 361 So. 3d 785, 793 (Fla. 2023) ("The circuit court was correct in denying this claim as procedurally barred because versions of it were raised in prior proceedings."); *Hendrix*, 136 So. 3d at 1125 ("Claims raised and rejected in prior postconviction proceedings are procedurally barred from being relitigated in a successive motion." (citing *Van Poyck*, 116 So. 3d at

362)). And although Walls argues that procedural bars should not apply to intellectual disability claims, we reject that argument, as we have in the past. *See Pittman v. State*, 417 So. 3d 287, 292 (Fla.) ("We equally reject Pittman's argument that procedural bars should not apply to intellectual disability claims. . . . [W]e have regularly applied procedural bars to exemption-from-execution claims."), *cert. denied*, No. 25-5605, 2025 WL 2649015 (U.S. Sept. 16, 2025); *Dillbeck v. State*, 357 So. 3d 94, 100 (Fla. 2023); *Carroll v. State*, 114 So. 3d 883, 886 (Fla. 2013).

Even were the claim not barred, it fails on the merits. Walls' argument on this point depends on retroactive application of *Hall*. But *Phillips* forecloses application of *Hall* to Walls, and Walls has not given us reason to reconsider that holding. Likewise, this Court's decision to adhere to *Phillips* does not result in an arbitrary and capricious application of the death penalty. We recently rejected a similar constitutional challenge and maintain that course here. *See Pittman*, 417 So. 3d at 293 (holding that this Court's adherence to *Phillips*, which correctly applies our established retroactivity test, does not alter our conclusion that the death penalty scheme is constitutionally sound).

**B**

Next, Walls argues that the postconviction court erred in denying his second claim in which he argued that he is categorically exempt from execution because he was nineteen when he committed his capital offense. Walls asserts that advancements in scientific research show individuals between the ages of eighteen and twenty-two are, developmentally, no different from juveniles under the age of eighteen. For this reason, he argues, the holding in *Roper v. Simmons*, 543 U.S. 551 (2005), should be expanded to include individuals who were under the age of twenty-one at the time their capital offenses were committed.

**1**

As the postconviction court correctly determined, this claim is procedurally barred. Walls raises this issue outside of the one-year time limit under rule 3.851 and he has not shown any of the exceptions to the time bar apply. Fla. R. Crim. P. 3.851(d). Walls marshals what he classified as new scientific evidence to support his claim, but we have previously rejected arguments that similar evidence constitutes newly discovered evidence sufficient to overcome procedural bars. *See, e.g., Sliney v. State*, 362 So. 3d

186, 188-89 (Fla. 2023) (rejecting argument that a new consensus among experts based on the 2021 version of the Intellectual Disability manual issued by the American Association on Intellectual and Developmental Disabilities constituted newly discovered evidence); *Barwick*, 361 So. 3d at 793 (citing *Foster v. State*, 258 So. 3d 1248, 1253 (Fla. 2018)); *see also Gudinas v. State*, 412 So. 3d 701, 711 (Fla.) ("literature, research, studies, reports, and cases discussing maturity, age, and the fact that the brain is not fully developed or matured by the age of eighteen or twenty or even twenty-five have been well known in the public domain for decades, and even before *Roper* was decided"), *cert. denied*, 145 S. Ct. 2833 (2025).

Walls' attempt to distinguish the evidence he submits from the precedent that precedes him fails. For example, Walls argues that Dr. Steinberg's declaration, dated November 18, 2025, reflects an expert opinion on a gradually emerging scientific understanding and is therefore sufficient to overcome procedural bars. But the Steinberg declaration is like the evidence we rejected as "newly discovered" in *Sparre v. State*, No. SC2024-1512, 2025 WL 3481670, at *3 (Fla. Dec. 4, 2025), because the underlying factual

basis for the study was available years before the relevant postconviction motion was filed.[12]  So, the declaration cannot support the postconviction relief Walls seeks.  For the same reason, we reject Walls' arguments that recent judicial decisions in other states constitute newly discovered evidence.

Even were it timely though, Walls' claim fails on the merits. "We have . . . repeatedly rejected the argument that *Roper*'s categorial ban on the execution of individuals who were under eighteen years old at the time they committed their capital offense(s) should be extended to defendants whose chronological age was over eighteen at the time of their offense(s)."  *Gudinas*, 412 So. 3d at 712-13 (collecting cases).  We have also acknowledged that we lack authority, due to the conformity clause of article I, section 17 of the Florida Constitution, to extend *Roper* or *Atkins*.  *Id.* at 713.  The postconviction court therefore properly denied the claim.

---

12.  While Walls asserts in his reply brief that Dr. Steinberg explains the scientific consensus giving rise to Walls' *Roper* claim did not exist before this year, that assertion is refuted by the record. The Steinberg declaration states the "scientific information was not available at the time of Mr. Walls's sentencing in 1992."  And although Dr. Steinberg cites more recent state supreme court decisions, the scientific data underlying the declaration spans decades.

## 2

In apparent recognition of the hurdle Florida's conformity clause presents to his claim, Walls next argues that article I, section 17 of the Florida constitution is unconstitutional. This is also a claim we have recently considered and rejected as well. *Gudinas*, 412 So. 3d at 714 ("While the states are required to adhere to the Supreme Court's Eighth Amendment jurisprudence, neither the Eighth nor Fourteenth Amendments require states to expand the protections afforded by the Eighth Amendment or to interpret their own corresponding state constitutional prohibitions against cruel and unusual punishment in a more expansive manner than the Supreme Court has interpreted the federal prohibition."). In adhering to this position today, we reject Walls' argument that doing so results in Florida falling below the floor established by Supreme Court jurisprudence. We likewise reject his argument that recent legislative activity and political statements release the judiciary from its obligation to adhere to a constitutionally mandated conformity clause.

## C

Finally, Walls argues that the thirty-seven years he has spent

on death row constitutes cruel and unusual punishment in violation of the Eighth Amendment.

Walls makes no attempt to justify the untimeliness of this claim in his postconviction motion other than with a conclusory introductory sentence alleging "[f]acts in support of these claims could not have been raised in a prior motion." To the extent the claim is not procedurally barred though, it fails. We recently addressed a similar argument in *James v. State*, 404 So. 3d 317, 325 (Fla.), *cert. denied*, 145 S. Ct. 1351 (2025). There we acknowledged decades-old precedent observing that "no federal or state court has accepted the argument that a prolonged stay on death row constitutes cruel and unusual punishment." *Id.* (quoting *Booker v. State*, 969 So. 2d 186, 200 (Fla. 2007)). We also highlighted the recent death warrant cases in which we have repeatedly rejected similar arguments. *Id.*; *see Owen v. State*, 364 So. 3d 1017, 1027 (Fla. 2023) (declining to recognize Owen's claim that thirty-seven years on death row constitutes cruel and unusual punishment); *Dillbeck*, 357 So. 3d at 103 (affirming the denial of Dillbeck's claim that executing him after thirty years on death row constitutes cruel and unusual punishment, "consistent with our

- 20 -

longstanding precedent that such claims are 'facially invalid,' " and concluding that "Dillbeck's arguments about conditions on death row do not persuade us that our precedent is 'clearly erroneous' "); *Gaskin v. State*, 361 So. 3d 300, 308 (Fla. 2023) (rejecting claim that Gaskin's more than three decades on death row constituted cruel and unusual punishment). The postconviction court correctly denied this claim.

### III

In his habeas petition, Walls presents one claim in subparts. Specifically, he argues that he is entitled to review of his *Atkins* claim under *Hall*'s standards. In support, he characterizes this Court's application of *Phillips* to his case as a due process violation, arguing he acquired a right to *Hall* standards controlling his case upon this Court's mandate in 2017 and the United States Supreme Court's subsequent denial of the State's certiorari petition.

We reject Walls' claim because it is procedurally barred. Despite Walls' attempts to frame this as a new claim, Walls previously argued that the Due Process Clause entitled him to retroactive application of *Hall*, and this Court rejected his argument in his successive motion for postconviction relief. *Walls VII*, 361 So.

3d at 234 n.5.  He therefore cannot relitigate the issue now.  *See, e.g., Jones v. State*, 419 So. 3d 619, 629 (Fla.) (denying habeas petition raising intellectual disability claim because it was already litigated), *cert. denied*, No. 25-5745, 2025 WL 2775490 (U.S. Sept. 30, 2025).  And even if it is a unique argument, it could have been raised in the prior appeal and consequently cannot serve as a basis for habeas relief.  *See* Fla. R. Crim. P. 3.851(e); *Gaskin*, 361 So. 3d at 309 ("Habeas corpus is not to be used to litigate or relitigate issues which could have been, should have been, or were previously raised."); *Knight v. State*, 923 So. 2d 387, 395 (Fla. 2005) ("[C]laims [that] were raised in [a] postconviction motion . . . cannot be relitigated in a habeas petition.").  Because Walls' habeas petition seeks only to relitigate an issue that was previously decided, we deny the petition.

Walls' claim also fails on the merits.  *State v. Okafor*, 306 So. 3d 930 (Fla. 2020), is not controlling here because our judgment ordering a new *Hall* hearing did not vacate Walls' death sentence.  *See Thompson v. State*, 341 So. 3d 303, 306 (Fla. 2022).  And regardless, Walls' due process rights have not been violated.  "Due process requires that a defendant be given notice and an

- 22 -

opportunity to be heard on a matter before it is decided." *Asay v. State*, 210 So. 3d 1, 27 (Fla. 2016) (citing *Huff*, 622 So. 2d at 983). Here, Walls has received the process due to him and has failed to meet the requisite standards for overcoming summary denial. *See Pittman*, 417 So. 3d at 292-93 (rejecting a death row defendant's request for due process relief to further demonstrate his mental state at the time of his offense because it was time-barred); *Bates v. State*, 416 So. 3d 312 (Fla.) (same), *cert. denied*, No. 25-5370, 2025 WL 2396797 (U.S. Aug. 19, 2025).

Finally, our decision to deny Walls habeas relief does not result in a manifest injustice. Walls is wrong that his due process argument has never been considered. And upon review of the record, and consistent with our recent precedent, we remain confident in the propriety of the sentence imposed. *See, e.g., Bates*, 416 So. 3d at 320 (no manifest injustice in determination that claim based on alleged brain damage was procedurally barred where movant had argued in prior proceeding that his counsel was ineffective for failing to investigate his mental health); *Owen*, 364 So. 3d at 1026-27 (declining to find manifest injustice based on procedurally barred claims of organic brain damage); *Dillbeck*, 357

- 23 -

So. 3d at 105 (rejecting argument that enforcing procedural bars would result in manifest injustice).

## IV

Because Walls is not entitled to relief, we deny his motion for a stay of execution. *See Dillbeck*, 357 So. 3d at 103 ("[A] stay of execution on a successive motion for postconviction relief is warranted only where there are substantial grounds upon which relief might be granted." (quoting *Davis v. State*, 142 So. 3d 867, 873-74 (Fla. 2014))).

## V

We affirm the summary denial of Walls' successive motion for postconviction relief. We also deny his petition for a writ of habeas corpus and his motion for stay of execution. No motion for rehearing will be considered by this Court. The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
LABARGA, J., dissents with an opinion.
CANADY, J., recused.

LABARGA, J., dissenting.

I continue to adhere to my dissent in *Phillips v. State*, 299 So. 3d 1013 (Fla. 2020) (receding from *Walls v. State*, 213 So. 3d 340 (Fla. 2016), and holding that *Hall v. Florida*, 572 U.S. 701 (2014), does not apply retroactively). For this reason, I dissent to the majority's decision affirming the denial of Walls's successive motion for postconviction relief.

An Appeal from the Circuit Court in and for Okaloosa County,
    William Francis Stone, Judge
    Case No. 461987CF000856XXXAXX
And an Original Proceeding – Habeas Corpus

Eric Pinkard, Capital Collateral Regional Counsel, Julissa R. Fontán, Assistant Capital Collateral Regional Counsel, Megan Montagno, Assistant Capital Collateral Regional Counsel, and John "Jack" LoBianco, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant/Petitioner

James Uthmeier, Attorney General, Charmaine M. Millsaps, Senior Counsel, Assistant Attorney General, Jason W. Rodriguez, Senior Assistant Attorney General, and Benjamin L. Hoffman, Senior Assistant Attorney General, Tallahassee, Florida,

    for Appellee/Respondent